UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | CHAPTER 11 |
| FOAMEX INTERNATIONAL INC., *et al.*, ) | |
| ) | Case No. 05-12685 (PJW) |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | re: docket #15 |

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN
POST-PETITION FINANCING ON A SECURED AND
SUPER-PRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105,
361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e), (B) TO UTILIZE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363 AND (C) TO REFINANCE
CERTAIN PRE-PETITION SECURED INDEBTEDNESS
(II) GRANTING ADEQUATE PROTECTION TO CERTAIN PRE-PETITION
SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364,
AND (III) SCHEDULING FINAL HEARING
PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon the motion (the "Motion"), dated September 19, 2005, of Foamex L.P. (the

"Borrower") and its affiliated debtors party to the DIP Financing Documents (as defined below),

each as debtor and debtor-in-possession (collectively, the "Debtors"), in the above-captioned

cases (the "Cases") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)       authorization for the Borrower to obtain post-petition financing

(the "Financing"), and for each of the guarantors named in the DIP Financing

Documents (the "Guarantors") to guaranty the Borrower's respective obligations under or in connection with (x) a debtor-in-possession revolving credit facility (the "DIP Revolving Credit Facility") in an amount up to the aggregate principal amount of $240 million (including a $40 million sub-limit for letters of credit) (the "DIP Revolving Credit Loans") (the actual available principal amount at any time being subject to those conditions set forth in the DIP Revolving Credit Documents (as defined below)) from Bank of America, N.A. ("B of A"), as administrative agent (in such capacity, the "DIP Revolving Credit Agent"), for itself and a syndicate of financial institutions (together with B of A, the "DIP Revolving Credit Lenders") and arranged by Banc of America Securities LLC and (y) a debtor-in-possession term loan facility (the "DIP Term Loan Facility" and, together with the DIP Revolving Credit Facility, the "DIP Facilities") in the principal amount of $80 million (the "DIP Term Loan" and, together with the DIP Revolving Credit Loans, the "DIP Loans") from Silver Point Finance LLC ("Silver Point"), as administrative agent (the "DIP Term Loan Agent" and, together with the DIP Revolving Credit Agent, the "DIP Agents") for itself and a syndicate of financial institutions (together with Silver Point, the "DIP Term Loan Lenders" and, together with the DIP Revolving Credit Lenders, the "DIP Lenders") to be arranged by Silver Point or affiliates thereof;

(2)    authorization for the Debtors to execute and enter into the DIP Financing Documents and to perform such other and further acts as may be required in connection with the DIP Financing Documents;

2

064397.1001

(3)      the granting of adequate protection to the lenders under or in connection with that certain Indenture, dated as of March 25, 2002 (as heretofore amended, supplemented or otherwise modified, the "Senior Secured Notes Indenture"), among the Borrower, Foamex Capital Corporation ("Foamex Capital") and U.S. Bank National Association, as trustee and collateral agent (in such capacity, the "Senior Secured Notes Trustee") under the Senior Secured Notes Indenture pursuant to which the Borrower and Foamex Capital issued $300 million (original principal amount) of 10-3/4% Senior Secured Notes due April 1, 2009 (the "Senior Secured Notes");

(4)      authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Senior Secured Notes Trustee has an interest, and the granting of adequate protection to the Senior Secured Notes Trustee with respect to, *inter alia*, such use of its cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as hereinafter defined);

(5)      the granting of superpriority claims to the DIP Agents and the DIP Lenders on the terms and conditions described herein payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof, subject to the Carve Out (as defined below);

(6)      pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this order (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to forthwith execute (x) the DIP Revolving Credit Documents (as defined below)

3

064397.1001

and borrow or obtain letters of credit from the DIP Revolving Credit Lenders under the DIP Revolving Credit Documents up to an aggregate principal or face amount at any time outstanding not to exceed $221 million to be used (i) for working capital and other general corporate purposes of the Debtors (subject to any limitations of borrowings and issuances of letters of credit under the DIP Revolving Credit Documents) including the payment of interest, fees and expenses under the DIP Credit Agreements (as defined below) and the payment of interest, fees (other than prepayment penalties, premiums or similar payments) and expenses under the Pre-Petition Term Loan B Agreement (as defined below) and (ii) to refinance all amounts outstanding as of September 19, 2005 (the "Petition Date") under the Credit Agreement, dated as of August 18, 2003 (as heretofore amended, supplemented or otherwise modified, the "Pre-Petition Revolving Credit Agreement"), among the Borrower, certain of its affiliates, B of A, as administrative agent (the "Pre-Petition Revolving Credit Agent"), and the lenders party thereto (collectively, the "Pre-Petition Revolving Credit Lenders") pursuant to which, among other things, the Pre-Petition Revolving Credit Lenders made certain loans and extended certain other financial accommodations to the Borrower, including deeming all outstanding letters of credit issued under the Pre-Petition Revolving Credit Agreement to constitute letters of credit issued under the DIP Revolving Credit Agreement and (y) the DIP Term Loan Documents (as defined below) and borrow from the DIP Term Loan Lenders an amount equal to $80 million to be used to refinance all amounts outstanding as of the Petition Date

4

under the Credit Agreement, dated as of August 18, 2003 (as heretofore amended, supplemented or otherwise modified, the "<u>Pre-Petition Term Loan B Agreement</u>" and, together with the Pre-Petition Revolving Credit Agreement, the "<u>Pre-Petition Credit Agreements</u>") among Borrower, certain of its affiliates, Silver Point, as administrative agent (the "<u>Pre-Petition Term Loan B Agent</u>" and, together with the Pre-Petition Revolving Credit Agent, the "<u>Pre-Petition Agents</u>"), and the lenders party thereto (collectively, the "<u>Pre-Petition Term Loan B Lenders</u>" and, together with the Pre-Petition Revolving Credit Lenders, the "<u>Pre-Petition Lenders</u>") pursuant to which the Pre-Petition Term Loan B Lenders made a term loan to the Borrower, (b) authorizing the Debtors' use of cash collateral of the Senior Secured Notes Trustee, and (c) granting the Senior Secured Notes Trustee the adequate protection described herein; and

(7)    that this Court schedule a final hearing (the "<u>Final Hearing</u>") to be held within 45 days of the entry of the Interim Order to consider entry of a final order (the "<u>Final Order</u>") authorizing and approving (a) (i) the DIP Revolving Credit Documents and the balance of the borrowings and letter of credit issuances under the DIP Revolving Credit Documents on a final basis, as set forth in the Motion and the DIP Revolving Credit Documents filed with this Court and (ii) the DIP Term Loan Documents on a final basis, as set forth in the Motion and the DIP Term Loan Documents filed with this Court and (b) authorizing the Debtors to waive the right to charge, pursuant to section 506(c) of the Bankruptcy Code, any costs of administration of the Cases (except as permitted by the Carve Out)

against any of the Pre-Petition Collateral (as defined below) and the Collateral (as defined below).

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the creditors identified on the Debtors' consolidated list of their twenty-five largest unsecured creditors, counsel for the Pre-Petition Revolving Credit Agent, counsel for the Pre-Petition Term Loan B Agent, counsel for the DIP Revolving Credit Agent, counsel for the DIP Term Loan Agent, counsel for the ad hoc committee of holders of Senior Secured Notes (the "Ad Hoc Committee"), the Senior Secured Notes Trustee, the indenture trustees for each of the Debtors subordinated note issuances, counsel for Steel Partners II, L.P. and on the United States Trustee for the District of Delaware.

The Interim Hearing having been held by this Court on September 20, 2005.

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.* This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 11 U.S.C. §§ 1408 and 1409.

2.     *Notice.* The notice given by the Debtors of the Motion and the Interim Hearing has been given pursuant to Bankruptcy Rules 4001(b) and (c) to the creditors identified on the Debtors' consolidated list of their twenty-five largest unsecured creditors, counsel for the Pre-Petition Revolving Credit Agent, counsel for the Pre-Petition Term Loan B Agent, counsel for the DIP Revolving Credit Agent, counsel for the DIP Term Loan Agent, counsel for the Ad Hoc

6

Committee, the Senior Secured Notes Trustee, the indenture trustees for each of the Debtors subordinated note issuances and counsel for Steel Partners II, L.P. by facsimile on September 19, 2005 and to the United States Trustee for the District of Delaware by hand delivery on September 16, 2005.

3.    *Debtors' Stipulations.* Without prejudice to the rights of any other party including any Committee (as defined below) authorized to assert any claims on behalf of the estates (but subject to the limitations thereon contained in paragraphs 15 and 16 below), the Debtors admit, stipulate and agree that:

(a)    (i) as of the Petition Date, the Borrower and Guarantors party to (x) the Pre-Petition Revolving Credit Documents (as defined below) were indebted and liable to the Pre-Petition Revolving Credit Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $195,984,108.30 consisting of revolving credit loans having the aggregate outstanding principal amount of $141,464,143.46, term loans in the aggregate outstanding principal amount of $32,863,742.26 and letters of credit having an aggregate undrawn amount of $21,656,222.58, in each case, provided by the Pre-Petition Revolving Credit Lenders pursuant to, and in accordance with the terms of, the Pre-Petition Revolving Credit Agreement and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Revolving Credit Documents"), including in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition Revolving Credit Documents), charges, indemnities and other obligations incurred in connection therewith as provided in the Pre-Petition Revolving Credit Documents (collectively, the "Pre-Petition Revolving Credit

7

DB02:5054352.2                                                                064397.1001

Obligations"), and (y) the Pre-Petition Term Loan B Documents (as defined below) were indebted and liable to the Pre-Petition Term Loan B Lenders, without defense, counterclaim or offset of any kind, in the aggregate outstanding principal amount of $80 million in respect of term loans made by the Pre-Petition Term Loan B Lenders pursuant to, and in accordance with the terms of, the Pre-Petition Term Loan B Agreement and all collateral and ancillary documents executed in connection therewith (the "Pre-Petition Term Loan B Documents" and, together with the Pre-Petition Revolving Credit Documents, the "Pre-Petition Financing Documents"), including in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Pre-Petition Term Loan B Documents), charges, indemnities and other obligations incurred in connection therewith as provided in the Pre-Petition Term Loan B Documents (collectively, the "Pre-Petition Term Loan B Obligations" and, together with the Pre-Petition Revolving Credit Obligations, the "Pre-Petition Obligations"), (ii) the Pre-Petition Obligations constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with their terms (except as enforcement thereof may be limited or affected by the Bankruptcy Code) and (iii) no portion of the Pre-Petition Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(b)      the liens and security interests granted to (x) the Pre-Petition Revolving Credit Agent for its benefit and for the benefit of the Pre-Petition Revolving Credit Lenders pursuant to and in connection with the Pre-Petition Revolving Credit Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the

8

Pre-Petition Revolving Credit Agent and/or the Pre-Petition Revolving Credit Lenders) are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal property, real property and fixtures described in the Pre-Petition Revolving Credit Documents (including the set off rights described in the Pre-Petition Revolving Credit Documents and arising by operation of law, collectively, the "Pre-Petition Revolving Credit Collateral") and (ii) not subject to avoidance, recharacterization, impairment or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (y) the Pre-Petition Term Loan B Agent for its benefit and for the benefit of the Pre-Petition Term Loan B Lenders pursuant to and in connection with the Pre-Petition Term Loan B Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Pre-Petition Term Loan B Agent and/or the Pre-Petition Term Loan B Lenders) are (i) valid, binding, perfected, enforceable, liens and security interests in the personal property, real property and fixtures described in the Pre-Petition Term Loan B Documents (including the set off rights described in the Pre-Petition Term Loan B Documents and arising by operation of law, collectively, the Pre-Petition Term Loan B Collateral" and together with the Pre-Petition Revolving Credit Collateral, the "Pre-Petition Collateral") and (ii) not subject to avoidance, recharacterization, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(c)     The aggregate value of the Pre-Petition Collateral provided to the Pre-Petition Agents and the Pre-Petition Lenders exceeds the aggregate amount of the Pre-Petition Obligations;

9

(d)     (i) as of the Petition Date, Foamex, L.P. and its affiliates who have guaranteed the Senior Secured Notes Indenture were indebted and liable to the Senior Secured Notes Trustee, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately \$300 million of principal, interest, fee and expenses (the "Pre-Petition Senior Secured Note Obligations") pursuant to the Senior Secured Notes Indenture and related collateral and ancillary documents executed in connection therewith (the "Senior Secured Notes Collateral Documents"), and (ii) no portion of the Pre-Petition Senior Secured Note Obligations are subject to disallowance, avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(e)     the liens and security interests granted to the Senior Secured Notes Trustee for its benefit and for the benefit of the holders of the Senior Secured Notes pursuant to and in connection with the Senior Secured Notes Collateral Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Senior Secured Notes Trustee or the holders of the Senior Secured Notes) are (i) valid, binding, perfected, enforceable, liens and security interests in the Pre-Petition Collateral and (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

4.     *Findings Regarding the Financing.* Based on the record at the hearing on this motion.

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors have an immediate need to obtain the Financing and use cash collateral in order to permit, among other things, the orderly continuation of the operation of their

10

DB02:5054352.2                                                                   064397.1001

businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of cash collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Financing Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agents and the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the DIP Financing Documents.

(d)     Based on the record presented to the Court by the Debtors it appears that the terms of the Financing and the use of cash collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing as it relates to the DIP Revolving Credit Facility has been negotiated in good faith and at arm's-length among the Debtors, the DIP Revolving Credit Agent and the DIP Revolving Credit Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Revolving Credit Facility and the DIP

11

Revolving Credit Documents, including without limitation, (i) DIP Revolving Credit Loans made

pursuant to the Debtor-in-Possession Credit Agreement substantially in the form attached as

Exhibit B to the Motion (as amended, modified or supplemented from time to time, the "<u>DIP</u>

<u>Revolving Credit Agreement</u>"), and (ii) any "Obligations" (as defined in the DIP Revolving

Credit Agreement), including credit extended in respect of overdrafts and related liabilities and

other depository, treasury and cash management services and other clearing services provided by

B of A or its affiliates (all of the foregoing in clauses (i) and (ii) collectively, the "<u>DIP Revolving</u>

<u>Credit Obligations</u>"), shall be deemed to have been extended by the DIP Revolving Credit Agent

and the DIP Revolving Credit Lenders and their affiliates in good faith, as that term is used in

section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by

section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section

364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated,

reversed or modified, on appeal or otherwise.

      (f)      The Financing as it relates to the DIP Term Loan Facility has been

negotiated in good faith and at arm's-length among the Debtors, the DIP Term Loan Agent and

the DIP Term Loan Lenders, and all of the Debtors' obligations and indebtedness arising under,

in respect of or in connection with the DIP Term Loan Facility and the DIP Term Loan

Documents, including without limitation, (i) DIP Term Loans made pursuant to the Debtor-in-

Possession Credit Agreement substantially in the form attached as Exhibit C to the Motion (as

amended, modified or supplemented from time to time, the "<u>DIP Term Loan Agreement</u>" and,

together with the DIP Revolving Credit Agreement, the "<u>DIP Credit Agreements</u>"), and (ii) any

"Obligations" (as defined in the DIP Term Loan Agreement) (all of the foregoing in clauses (i)

and (ii) collectively, the "DIP Term Loan Obligations" and, together with the DIP Revolving

Credit Obligations, the "DIP Obligations"), shall be deemed to have been extended by the DIP

Term Loan Agent and the DIP Term Loan Lenders and their affiliates in good faith, as that term

is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections

offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of

section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is

vacated, reversed or modified, on appeal or otherwise.

        (g)      The Debtors have requested entry of this Order pursuant to Bankruptcy

Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Order, the Debtors'

estates will be immediately and irreparably harmed.  Consummation of the Financing (including

the repayment of the Pre-Petition Obligations) and the use of cash collateral in accordance with

this Order and the DIP Financing Documents is therefore in the best interest of the Debtors'

estates.

      5.     *Authorization of the Financing and the DIP Financing Documents.*

        (a)      The Debtors are hereby authorized to enter into the DIP Financing

Documents including without limitation, the DIP Credit Agreements.  The Borrower is hereby

authorized to borrow money under the respective DIP Credit Agreements and to cause to be

issued letters of credit under the DIP Revolving Credit Agreement, and the Guarantors are hereby

authorized to guaranty such borrowings and the obligations of the Borrower with respect to such

letter of credit issuances in accordance with the terms of this Order and the respective DIP

Financing Documents, which shall be used for all purposes permitted under the respective DIP

Financing Documents, including, without limitation, (i) to provide working capital for the

Borrower and the Guarantors and to pay interest, fees and expenses in accordance with this Order and the respective DIP Financing Documents and (ii) to refinance the respective Pre-Petition Obligations.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary or desirable for the Debtors' performance of its obligations under the Financing, including, without limitation:

(i)    the execution, delivery and performance of the Loan Documents (as defined in each of the DIP Credit Agreements) and all collateral and ancillary documents to be executed in connection therewith (collectively, the "DIP Financing Documents"),

(ii)    the execution, delivery and performance of one or more amendments to either or both of the DIP Credit Agreements for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the relevant DIP Lenders, in each case in such form as the Debtors, the respective DIP Agent and the respective DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to either or both of the DIP Credit Agreements that do not change the scheduled maturity of the extensions of credit thereunder or increase the aggregate commitments, the rate of interest or are otherwise considered not material (in the good faith judgment of the respective DIP Agent, respective DIP Lenders and the Debtors),  provided that such amendments shall, promptly after the effectiveness thereof, be filed

14

on the Court's docket and served upon any statutory committee appointed in these Cases, the Ad Hoc Committee and the Senior Secured Notes Trustee),

        (iii)    the non-refundable payment to the DIP Agents or the DIP Lenders, as the case may be, of the fees referred to in the DIP Financing Documents and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Financing Documents, and

        (iv)    the performance of all other acts required under or in connection with the DIP Financing Documents.

        (c)    Upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Financing Documents. *Subject to paragraphs 15 and 16,* No obligation, payment, transfer or grant of security under the DIP Financing Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

        6.    *Superpriority Claims.*

        (a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative

    

expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out; provided, however, that the Superpriority Claims granted to the DIP Revolving Credit Agent and the DIP Revolving Credit Lenders in respect of the DIP Revolving Credit Facility shall be senior in all respects to the Superpriority Claims granted to the DIP Term Loan Agent and the DIP Term Loan Lenders in respect of the DIP Term Loan Facility.

(b)    For purposes hereof, the "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) after the occurrence and during the continuance of an Event of Default (as defined in each of the DIP Credit Agreements) an amount not exceeding $3,000,000.00 (inclusive of the amounts set forth in clause (iii) as well as unpaid professional fees and expenses incurred by the Debtors and any official committee(s) appointed in the Cases (each, a "Committee") prior to the occurrence of a Default or Event of Default (as defined in each of the DIP Credit Agreements)) ("Priority Professional Expense Cap"), which amount may be used subject to the terms of this Order, including, without limitation, paragraphs 15 and 16 hereof, to pay any fees or expenses incurred by the Debtors and any Committee in respect of (A) allowances of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or any Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties (but excluding fees and expenses of third party professionals

16

employed by such members) (collectively, "Professional Expenses"); *provided, however* (x) that the Priority Professional Expense Cap shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses awarded and paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked, (y) that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above and (z) nothing herein shall be construed to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure for interim payments of administrative expenses from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications; (iii) in the event of the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, to pay fees and expenses incurred by a trustee and any professionals retained by such trustee, in an amount not exceeding $200,000 in respect of allowances of compensation for services rendered and reimbursement of expenses awarded by the Bankruptcy Court to the trustee or any professional retained by such trustee and (iv) effective upon entry of the Final Order, in exchange for priority payment of the Professional Expenses, the parties entitled to be paid therefrom shall not be entitled, directly or indirectly, to charge the Collateral whether by operation of Sections 105, 506(c) or 552(b) or otherwise. *(subject to entry of a Final Order)* The waiver set forth in the immediately preceding sentence is for the sole benefit of the DIP Lenders, the DIP Agents, the Pre-Petition Lenders, the Pre-Petition Agents and the Senior Secured Notes Trustee and no other party shall be entitled to assert any claim or defense on account of such waiver.

7.    *[Intentionally Omitted].*

17

8.      *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the
date of this Order and without the necessity of the execution by any of the Debtors or recordation
or filing of mortgages, security agreements, control agreements, pledge agreements, financing
statements or other similar documents, the following security interests and liens are hereby
granted to each of the DIP Agents for its own benefit and the benefit of the respective DIP
Lenders for whom it acts as DIP Agent (all property identified in clauses (a), (b) and (c) below
being collectively referred to as the "Collateral"), subject, only in the event of the occurrence and
during the continuance of an Event of Default, to the payment of the Carve Out (all such liens
and security interests granted to the DIP Agents, for their own benefit and for the benefit of the
DIP Lenders, pursuant to this Order and the DIP Financing Documents, the "DIP Liens"):

          (a)      First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of
the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority
senior security interest in and lien upon all pre- and post-petition property of the Debtors,
whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date (or
as a result of the refinancing of the Pre-Petition Obligations) is not subject to valid, perfected and
non-avoidable liens (collectively, "Unencumbered Property"), including without limitation,
inventory, accounts receivable, other rights to payment whether arising before or after the
Petition Date, contracts, properties, plants, equipment, general intangibles, payment intangibles,
chattel paper, documents, instruments, investment property, fixtures, real property, patents,
copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and
the proceeds of all the foregoing. Unencumbered Property shall exclude the Debtors' claims and

18

causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions").

(b)      Priming Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, payment intangibles, chattel paper, documents, instruments, investment property, fixtures, real property, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds of all the foregoing), whether now existing or hereafter acquired. Such security interests and liens shall be senior in all respects to interests of other parties arising out of security interests or liens, if any, on such property existing immediately prior to the Petition Date, including in any event the interests in such property of the Senior Secured Notes Trustee arising from current and future liens of the Senior Secured Notes Trustee (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date to the extent (and only to such extent) that such liens are senior to the liens of the Pre-Petition Agents and the Pre-Petition Lenders and are permitted under the Pre-Petition Financing Documents to be in existence and to be senior to the liens of the Pre-Petition Agents and the Pre-Petition Lenders.

(c)      Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in

19

and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Agents and the DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agents and the DIP Lenders are junior to such valid, perfected and unavoidable liens.

(d)    Liens Senior to Certain Other Liens.  Except as otherwise provided herein, the DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, except for any liens arising after the Petition Date that are senior to the DIP Liens by operation of law.

(e)    Lien Intercreditor Agreement.  Notwithstanding anything to the contrary contained herein, the DIP Liens granted to the DIP Revolving Credit Agent and the DIP Revolving Credit Lenders to secure the DIP Revolving Credit Loans shall have priority over the DIP Liens granted to the DIP Term Loan Agent and the DIP Term Loan Lenders to secure the DIP Term Loans in accordance with the terms of the Post-Petition Intercreditor Agreement between the DIP Revolving Credit Agent, for itself and the DIP Revolving Credit Lenders, and

the DIP Term Loan Agent, for itself and the DIP Term Loan Lenders (the "Post-Petition Intercreditor Agreement").

      9.    *Protection of DIP Lenders' Rights.*

      (a)    So long as there are any DIP Loans or other amounts outstanding under the DIP Credit Agreements or any other DIP Obligations, or the DIP Revolving Credit Lenders have any Commitments (as defined in the DIP Revolving Credit Agreement) under the DIP Revolving Credit Agreement, the Senior Secured Notes Trustee shall (i) take no action to foreclose upon or recover in connection with the liens granted pursuant to the Senior Secured Notes Indenture or the Senior Secured Notes Collateral Documents or this Order, or otherwise exercise remedies against any Collateral, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Financing Documents and, effective upon such release, be deemed to release its lien therein, (iii) not file any financing statements, trademark filings, copyright filings, patent filings,  mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the Collateral unless solely as to this clause (iii), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date, and (iv) not seek to terminate or modify the use of Cash Collateral, obtain additional (or different) adequate protection than that set forth in this Order or seek to litigate or relitigate the priming of the Senior Secured Notes Trustee's liens and the grant of the Superpriority Claims of the DIP Agents and the DIP Lenders granted by this Order.

21

(b)     To the extent applicable the automatic stay provisions of section 362 of the

Bankruptcy Code are vacated and modified (i) whether or not an Event of Default or a default by

any of the Debtors of any of their obligations under this Interim Order has occurred, to require all

cash, checks or other collections or proceeds from Collateral received by or on behalf of any of

the Debtors to be deposited in accordance with the DIP Financing Documents, and to apply any

amounts so deposited and other amounts paid to or received by the DIP Lenders or the DIP

Agents, under the DIP Financing Documents and this Interim Order, as provided in the DIP

Financing Documents and this Interim Order; (ii) to permit the DIP Agent and the DIP Lenders

party thereto to exercise, upon the occurrence of an Event of Default under the relevant DIP

Facility, all rights and remedies under the DIP Financing Documents relating to such DIP Facility

(other than those rights and remedies against the Collateral as provided in clause (iii) below) and

(iii) subject to the terms of the Post-Petition Intercreditor Agreement, to the extent necessary to

permit the DIP Agent and the DIP Lenders party thereto to exercise, upon the occurrence and

during the continuance of an Event of Default under the relevant DIP Facility and subject to the

giving of five (5) business days prior written notice to counsel for the Debtors, counsel for any

Committee, counsel for the Ad Hoc Committee, counsel for the Senior Secured Notes Trustee

and the Office of the United States Trustee to the extent provided for in the DIP Credit

Agreement relating to such DIP Facility, all rights and remedies against the Collateral provided

for in the DIP Financing Documents relating to such DIP Facility (including without limitation,

the right to setoff monies of the Debtors in accounts maintained with either DIP Agent or any

DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may

be raised by any party in opposition thereto shall be whether, in fact, an Event of Default under

22

the relevant DIP Facility has occurred and is continuing, and no other issue or argument shall be relevant to any opposition to the exercise by any of the DIP Agents or the DIP Lenders of rights and remedies under this Order or any of the DIP Financing Documents. In no event shall any of the DIP Agents, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders, the Senior Secured Notes Trustee or the holders of the Senior Secured Notes be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Pre-Petition Collateral or the Collateral. Immediately upon the occurrence and continuation of an Event of Default under the DIP Facilities or a violation of this Interim Order by any of the Debtors (i) the DIP Lenders and the DIP Agents shall have no further obligation to provide financing under the DIP Loan Documents or this Interim Order, (ii) at the discretion of either DIP Agent and subject to the terms of the Post-Petition Intercreditor Agreement, any authorization to use Cash Collateral shall terminate, and (iii) the DIP Agents are hereby authorized to, without providing any prior notice thereof, charge interest at the default rate set forth in the relevant DIP Credit Agreement and require cash collateralization of obligations relating to letters of credit issued pursuant to the relevant DIP Credit Agreement.

10. *Cash Collateral.* Any proceeds of the Pre-Petition Collateral are cash collateral of the Senior Secured Notes Trustee within the meaning of section 363(a) of the Bankruptcy Code. The Debtors' cash and all such proceeds of Pre-Petition Collateral are referred to herein as "Cash Collateral."

11. *Use of Cash Collateral.* Subject to the limitations contained in this Order, the Debtors are hereby authorized to use all Cash Collateral of the Senior Secured Notes Trustee, and the Senior Secured Notes Trustee is directed promptly to turn over to the Debtors all Cash

23

Collateral received or held by it, *provided* that the Senior Secured Notes Trustee is granted adequate protection as hereinafter set forth.

12.     *Adequate Protection.* The Debtors have requested that the Senior Secured Notes Trustee consent to, among other things, (i) the Debtors' use of the Cash Collateral and the other Pre-Petition Collateral, and (ii) the incurrence of the Financing and the Debtors' granting of priming liens in connection therewith. Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the Senior Secured Notes Trustee's interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Senior Secured Notes Trustee's interest in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Trustee's security interests and liens in the Pre-Petition Collateral by the DIP Agents and the DIP Lenders pursuant to the DIP Financing Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Senior Secured Notes Trustee is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)     Adequate Protection Liens. The Senior Secured Notes Trustee (for itself and for the benefit of the holders of the Senior Secured Notes) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) other valid and enforceable liens and security interests existing as of the Petition Date, which

24

attach to the Collateral, (ii) the DIP Liens granted to the DIP Agents for the benefit of the DIP

Lenders in this Order and pursuant to the DIP Financing Documents and any liens on the

Collateral to which such liens so granted to the DIP Agents are junior and (iii) the Carve Out (the

"Adequate Protection Liens").

(b)    Section 507(b) Claim. The Senior Secured Notes Trustee is hereby

granted, subject to the payment of the Carve Out, a superpriority claim as provided for in section

507(b) of the Bankruptcy Code, immediately junior to the Superpriority Claims under section

364(c)(1) of the Bankruptcy Code held by the DIP Agents and the DIP Lenders;

(c)    Interest Accrual. Interest shall accrue (but shall not be paid current) on the

Senior Secured Notes on and after the Petition Date at the contractual default rate (to the extent

such interest is allowable under section 506(b) of the Bankruptcy Code).

(d)    Additional Adequate Protection. The Debtors shall pay the reasonable

fees and expenses, without the necessity of any further application with the Court for approval or

payment, of i) O'Melveny & Myers LLP in accordance with that certain agreement dated July 28,

2005, local counsel to the Ad Hoc Committee, and Houlihan Lokey Howard & Zukin in

accordance with that certain agreement dated July 20, 2005, including without limitation monthly

payments upon the submission of invoices and ii) the Senior Secured Notes Trustee, including

outside counsel. *To the extent determined that the Senior Secured Notes are not oversecured, in accordance with section 506(b) of the Bankruptcy Code, any payments made pursuant to this paragraph 12(d) in excess of the amounts to which the Senior Secured Notes are otherwise entitled under section 506(b) shall be deemed a payment on account of the allowed claim of the holders of the Senior Secured Notes and the Senior Secured Notes Trustee.*

(e)    The Debtors shall furnish to the Senior Secured Notes Trustee and the Ad

Hoc Committee copies of all financial information and reports furnished to the DIP Lenders

pursuant to any of the DIP Financing Documents subject to appropriate confidentiality

arrangements. *The professionals seeking payment pursuant to this paragraph 12(d) shall submit monthly invoices to the Debtors, counsel for each of the DIP Lenders, the United States Trustee and counsel to any official committee appointed in these cases. If no objection to the payment of such invoices is filed and served on the professionals submitting such invoice and the Debtors within 10 business days, the Debtors shall be authorized to pay such invoices in accordance with the terms of this Order.*

(f)     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Senior Secured Notes Trustee. The Senior Secured Notes Trustee consents to the priming of its liens by the DIP Liens granted by this Order and the DIP Financing Documents.

13.     *Perfection of DIP Liens and Adequate Protection Liens*.

(a)     Subject to the provisions of paragraph 9 above, the DIP Agents, the DIP Lenders and the Senior Secured Notes Trustee are hereby authorized, but not required, to obtain, file or record financing statements, trademark filings, patent filings, copyright filings, mortgages, notices of lien, landlord waivers, bailee waivers, warehouseman waivers, other waivers or consents or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not either of the DIP Agents on behalf of the relevant DIP Lenders or the Senior Secured Notes Trustee shall, in its sole discretion, choose to file such financing statements, trademark filings, patent filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the time and on the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of either of the DIP Agents or the Senior Secured Notes Trustee be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar

26

instruments, and all filing offices are hereby authorized to accept such certified copy of this

Order for filing and recording.

      14.    *Preservation of Rights Granted Under the Order.*

      (a)    Except for the Carve-Out, no claim or lien having a priority superior to or

*pari passu* with those granted by this Order to the DIP Agents and the DIP Lenders or the Senior

Secured Notes Trustee, respectively, shall be granted or allowed while any portion of the

Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or

the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate

Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided

and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or

(ii) subordinated to or made *pari passu* with any other lien or security interest, whether under

section 364(d) of the Bankruptcy Code or otherwise.

      (b)    Unless all DIP Obligations shall have been paid in full, all Commitments

(as defined in the DIP Revolving Credit Agreement) have been terminated and the Adequate

Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall

constitute an Event of Default and a termination of the right to use Cash Collateral if any of the

Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the

prior written consent of the DIP Agents, or with respect to the rights and benefits granted to, and

interests of, the Senior Secured Notes Trustee, the Senior Secured Notes Trustee, and no such

consent shall be implied by any other action, inaction or acquiescence by the DIP Agents or the

Senior Secured Notes Trustee, as applicable, or (ii) an order dismissing any of the Cases. If an

order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at

27

any time entered, such order shall provide (in accordance with sections 105 and 349 of the
Bankruptcy Code) that (i) the Superpriority Claims, priming and other liens and security interests
granted to the DIP Agents and the DIP Lenders and the Adequate Protection Liens granted to the
Senior Secured Notes Trustee, as applicable, pursuant to this Order shall continue in full force
and effect and shall maintain their priorities as provided in this Order until all DIP Obligations
and Adequate Protection Obligations shall have been paid and satisfied in full (and that such
Superpriority Claims, priming and other liens and replacement security interests shall,
notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall
retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens
and security interests referred to in (i) above, *to the extent possible* .

      (c)     If any or all of the provisions of this Order are hereafter reversed,
modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the
validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual
receipt of written notice by the DIP Agents or the Senior Secured Notes Trustee, as applicable, of
the effective date of such reversal, stay, modification or vacation or (ii) the validity or
enforceability of any lien or priority authorized or created hereby or pursuant to the DIP
Financing Documents with respect to any DIP Obligations or Adequate Protection Obligations.
Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or
DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agents,
the DIP Lenders or the Senior Secured Notes Trustee prior to the actual receipt of written notice
by the DIP Agents or the Senior Secured Notes Trustee, as applicable, of the effective date of
such reversal, stay, modification or vacation shall be governed in all respects by the original

provisions of this Order, and the DIP Agents, DIP Lenders, and Senior Secured Notes Trustee shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Financing Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP Financing Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agents, the DIP Lenders, the Senior Secured Notes Trustee and the holders of the Senior Secured Notes granted by the provisions of this Order and the DIP Financing Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, upon entry of the final financing order in the Cases the Debtors will waive any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and the DIP Financing Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agents and the DIP Lenders granted by the provisions of this Order and the DIP Financing Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full and the Commitments (as defined in the DIP Revolving Credit Agreement) are terminated.

15.     *Effect of Debtors' Stipulations on Third Parties.* Any Committee appointed in the Cases or any other party in interest, including any trustee appointed prior to the expiration of the

60-day period referred to below (other than the Debtors), shall be permitted to investigate the validity, enforceability, priority and/or extent of the Pre-Petition Obligations and the Pre-Petition Senior Secured Note Obligations, respectively, and the liens and security interests of the Pre-Petition Agents, the Pre-Petition Lenders and the Senior Secured Notes Trustee. Any adversary proceeding or contested matter challenging the validity, enforceability, priority and/or extent of any of the Pre-Petition Obligations or the Pre-Petition Senior Secured Note Obligations, or any of the Pre-Petition Agents', the Pre-Petition Lenders' or the Senior Secured Notes Trustee's liens on the Pre-Petition Collateral must be commenced no later than the date that is sixty (60) days after the formation of the Official Committee of Unsecured Creditors (the "Creditors' Committee") in the Cases. If no such adversary proceeding or contested matter is timely filed or to the extent such adversary proceeding is timely filed with respect to less than the entire Pre-Petition Obligations or the Pre-Petition Senior Secured Note Obligations or less than all of the Pre-Petition Collateral, (x) the Pre-Petition Obligations and the Pre-Petition Senior Secured Note Obligations, respectively, and all related obligations of the Debtors with respect to which no adversary proceeding has been commenced or relates shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agents', the Pre-Petition Lenders' and the Senior Secured Notes Trustee's liens on the Pre-Petition Collateral with respect to which no adversary proceeding has been commenced or relates shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance and (z) with respect to which no adversary proceeding has been commenced or relates, the Pre-Petition Obligations, the Pre-Petition Senior Secured Note

30

Obligations, the Pre-Petition Agents', the Pre-Petition Lenders' and the Senior Secured Notes

Trustee's liens on the Pre-Petition Collateral and the Pre-Petition Agents, the Pre-Petition

Lenders and the Senior Secured Notes Trustee and the admissions, stipulations and agreements

contained in paragraph 3 hereof shall not be subject to any other or further challenge by any party

in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any

successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected

for any of the Debtors).

16.    *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding

anything herein or in any other order by this Court to the contrary, no DIP Loans, letters of credit,

Cash Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any

defense to, the validity, perfection, priority, extent or enforceability of any amount due under any

of the DIP Financing Documents, the Pre-Petition Financing Documents or the Senior Secured

Notes Indenture, or the liens or claims granted under any of this Order, the DIP Financing

Documents, the Pre-Petition Financing Documents or the Senior Secured Notes Collateral

Documents, (b) assert any claims or defenses or causes of action against any of the DIP Agents,

the Pre-Petition Agents, the DIP Lenders, the Pre-Petition Lenders, the Senior Secured Notes

Trustee or the holders of the Senior Secured Notes, or their respective agents, affiliates,

representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay either of the DIP

Agent's enforcement or realization on the Cash Collateral or the Collateral in accordance with

the relevant DIP Financing Documents or this Order, (d) seek to modify any of the rights granted

to any of the DIP Agents or the DIP Lenders or the Pre-Petition Agents or the Pre-Petition

Lenders hereunder or under any of the DIP Financing Documents or the Pre-Petition Financing

31

Documents, in each of the foregoing cases without such parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are permitted under the terms of the DIP Financing Documents and approved by an Order of this Court; provided that nothing in this Paragraph 16 shall be construed to limit any investigation as to the matters described.

17.     *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Financing Documents, the provisions of this Order shall govern.

18.     *Binding Effect; Successors and Assigns.*  The DIP Financing Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agents, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders, the Senior Secured Notes Trustee, any Committee appointed in these Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders, the Senior Secured Notes Trustee, and the Debtors and their respective successors and assigns; *provided, however*, that the DIP Agents and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

19.     *Limits on DIP Lenders' Liability.*  Nothing in this Order or in any of the DIP Financing Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon any of DIP Agents or the DIP Lenders any liability for any claims arising from the pre-petition or post-petition activities by the

32

Debtors or Debtors-in-Possession and their Affiliates in the operation of their businesses, or in connection with their restructuring efforts.

20.    *Final Hearing.* The Final Hearing is scheduled for _October 17_, 2005 at _1:00_ p.m before this Court.

21.    *Notice of Final Hearing.* The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Alan W. Kornberg and Diane Meyers and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Pauline Morgan, co-counsel for the Debtors; (b) Kaye Scholer LLP, 425 Park Avenue, New York, NY 10022-3598, Attn: Albert Fenster and Marc Rosenberg and Buchanan Ingersoll, The Nemours Building, 1007 North Orange Street, Suite 1110, Wilmington, Delaware 19801, Attn: Louis DeLucia and Jami Nimeroff, co-counsel for BofA, as DIP Revolving Credit Agent; (c) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Frederic Ragucci and Andrew Gottesman, ~~and Landis Rath + Cobb LLP, 919 Market St., Wilmington, Delaware 19801 attn: Adam Landis~~ counsel for Silver Point, as DIP Term Loan Agent; (d) O'Melveny & Myers, LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: Adam Harris, attorneys for the ad hoc committee of senior secured notcholders; (e) the Office of the United States Trustee for the District of Delaware, and (f) counsel for any official committee appointed

33

in these cases; and shall be filed with the Clerk of the United States Bankruptcy Court for the

District of Delaware, in each case to allow actual receipt by the foregoing no later than

*October* _11_, 2005 at 4:00 p.m., prevailing Eastern time.

Dated: September *20* 2005
       Wilmington, Delaware

                                        _____
                                        PETER J. WALSH
                                        UNITED STATES BANKRUPTCY JUDGE

34