# Exhibit A

## Engagement Letter

**Strictly Confidential**

**Engagement Letter**

October 6, 2005

**Official Committee of Unsecured Creditors
of Foamex International, Inc., et al.**
1221 McKinney Street
One Houston Center, Ste. 700
Houston, TX 77010

Attention: J. Donald Hamilton, Chairman

Re: Advisory Services

This agreement (the "Agreement") will confirm the arrangements under which Jefferies & Company, Inc. ("Jefferies") has been engaged by the Official Committee of Unsecured Creditors (the "Committee"), appointed in the bankruptcy cases (the "Cases") of Foamex International, Inc. and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), to act as exclusive financial advisor to the Committee in the Cases.

1.  Services. In connection with the Cases, Jefferies will perform the following financial advisory services, among others, for the Committee: (a) become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation. It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.  Cooperation.

    (a) The Committee will furnish or cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Jefferies requests (all such information gathered or furnished being the "Information"). The Committee and the Debtors shall advise Jefferies

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 2

promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Restructuring upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)  Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

3.   Use of Name, Advice, etc.

(a)  The Committee and the Debtors agree that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion. If Jefferies resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to Jefferies, despite any prior written approval that may have been given therefor.

(b)  Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person including, but not limited to, any member of the Committee in its individual capacity, any other security holder, or employee or creditor of the Debtors and may not be used or relied upon for any other purpose.

(c)  The Committee and the Debtors agree that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' service hereunder. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee or the Debtors without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

(d)  The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 3

otherwise. Jefferies and the Indemnified Persons shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

4. <u>Compensation</u>. The Debtors agree to pay Jefferies the following:

(a) The Debtors shall pay to Jefferies a monthly fee (the "<u>Monthly Fee</u>") equal to $150,000 per month. If this Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month. Each Monthly Fee will be fully accrued, due and payable in advance on the first day of each month.

(b) In addition, in consideration of the services rendered by Jefferies hereunder, the Debtors will pay or cause to be paid to Jefferies a transaction fee in an amount equal to the greater of (i) $500,000 or (ii) 1.00% of any recoveries by unsecured creditors in the Cases (the "<u>Transaction Fee</u>"). For the purposes of this Section 4(b), "recoveries" includes but is not limited to the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not. A credit equal to 33% of all Monthly Fees paid to Jefferies will be applied against the portion of any Transaction Fee in excess of $500,000. The Transaction Fee is fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Paragraph 8 below, and is due and payable on the earlier of (i) the date of receipt of recoveries or interests (as the case may be) by unsecured creditors in the Cases, or (ii) the effective date of a plan of reorganization in the Cases.

(c) The Debtors and the Committee acknowledge that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5. <u>Expenses</u>. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6. <u>Termination</u>. Jefferies' engagement hereunder will run from October 6, 2005, subject to approval by a final order of the Bankruptcy Court that is acceptable to Jefferies

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 4

in its sole and absolute discretion (the "Effective Date"), to the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by written notice by either Jefferies or the Committee on fifteen days' notice to the other. Upon any termination of this Agreement, the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event Jefferies' services hereunder are terminated by the Committee, and the Debtors complete a Restructuring within one year of such termination, then the Debtors shall pay Jefferies in cash, the Transaction Fee. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-7, 10, and 12-16 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, the Committee, Jefferies, and the Indemnified Persons, and any chapter 7 Trustee appointed in the Cases.

7. Indemnification, etc. As further consideration under this Agreement, the Debtors and their estates shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8. Bankruptcy Court Approval. The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 327 and 1103 of the Bankruptcy Code, from the bankruptcy court or district court having jurisdiction and presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for retention of Jefferies *nunc pro tunc* to October 6, 2005, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Sections 2-8, 12-16, and Schedule A), shall bind the Debtors to such terms and conditions as if the Debtors were a signatory hereto, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

Notwithstanding the Debtors and their estates' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 5

Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.    Exclusivity.  The Committee agrees that it will not engage any other person to perform any financial or similar consulting services with respect to any potential Restructuring. If the Committee is contacted by any person concerning a potential Restructuring, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

10.    No Assurances; Other Transactions; Disclaimer.

(a)    This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

(b)    Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party, or utilize for the Committee's benefit, any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and members of the Committee, and of potential participants in any Restructuring for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. The Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.    Construction and Governing Law.  This Agreement, together with Schedule A attached hereto and made part hereof, incorporates the entire understanding of the parties

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 6

and supersedes all previous agreements relating to the subject matter hereof should they exist. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12. Arbitration. Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "Claim") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors and the Committee agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13. Payments. All payments to be made to Jefferies hereunder shall be the joint and several liability of each of the Debtors in the Cases, and, unless otherwise agreed by Jefferies in its sole and absolute discretion, shall be made in cash by wire transfer of immediately available U.S. funds, without deduction for any tax, subject to any necessary Bankruptcy Court approval. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14. Announcements. The Committee and the Debtors agree that Jefferies may, following any Restructuring, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring. Jefferies shall be entitled to identify the Committee and use the Debtors' name and logo, if any, in connection therewith. The Committee and the Debtors agree that any press release it may issue announcing the Restructuring will, at Jefferies' request, contain a reference to Jefferies' role in the Restructuring.

15. Notices. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, at the address

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 7

set forth above, and (b) if to Jefferies, at 520 Madison Avenue, 12th Floor, New York, New York 10022, Attention: General Counsel.

16.     Miscellaneous. This Agreement incorporates the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto, subject to any necessary Bankruptcy Court approval. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in one or more facsimile counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

17.     Patriot Act. Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "Patriot Act"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

Official Committee of Unsecured Creditors of Foamex International, Inc., et al.
October 6, 2005
Page 8

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
Name: William Q. Derrough
Title: Managing Director

On Oct 19, 2005 before me personally appeared William Derrough, personally known to me.

Accepted and Agreed:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, INC., ET AL

State of New York
County of New York

By _____
Name: J. Donald Hamilton
Title: Chairman

CAITLIN DONOHUE
NOTARY PUBLIC, STATE OF NEW YORK
No. 01DO6115750
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES SEPT. 13, 2008

**Official Committee of Unsecured Creditors of Foamex International, Inc., et al.**
October 6, 2005
Page 8

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

Sincerely,

**JEFFERIES & COMPANY, INC.**

By _____
    Name:
    Title:

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS, INC., ET AL**

By _____[signature]_____
  Name: J. Donald Hamilton
  Title: Chairman

## SCHEDULE A

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases (the "Cases") of Foamex International, Inc. and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the District of Delaware. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in the Debtors' bankruptcy Cases.

As further consideration under the Agreement, the Debtors and their estates agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of its owners, parents, affiliates, security holders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred (collectively, "Losses"), related to or arising out of or in connection with Jefferies' services under the Agreement, any Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence, provided, however, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

Neither the Debtors nor the Committee shall settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party, unless such Indemnified Person has given its prior written consent, or the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding.

If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors and the Committee, as applicable, on the one hand, and the relative fault of Jefferies on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring (or the total transaction value of any proposed Restructuring) to all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any action or claim for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party. If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies, the Committee, the Debtors, or any such entity's affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day or part thereof that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day or part thereof that one of Jefferies' professional personnel is involved in the preparation therefore, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action, including but not limited to $400 per hour per person with respect to each hour of time spent responding to or relating to any other or further discovery requests.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the

## SCHEDULE A    (cont'd)

expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors, including any chapter 7 trustee appointed in the Debtors' Cases, the Committee and each of its members, and any successors or assigns thereof and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.