# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOAMEX INTERNATIONAL INC., *et al.*, | ) | Case No. 05-12685 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Ref. Docket No. 1875 |

**ORDER (i) APPROVING DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT; (ii) APPROVING FORM AND CONTENTS OF SOLICITATION PACKAGES; (iii) APPROVING FORM AND MANNER OF NOTICE OF THE CONFIRMATION HEARING; (iv) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES; (v) APPROVING FORMS OF BALLOTS; (vi) ESTABLISHING A VOTING DEADLINE FOR RECEIPT OF BALLOTS; (vii) APPROVING PROCEDURES FOR VOTE TABULATIONS; (viii) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF THE SECOND AMENDED PLAN AND ASSERTED CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AS PART OF THE SECOND AMENDED PLAN; AND (ix) GRANTING RELATED RELIEF**

This matter having come before the Court on the motion (the "Motion") of Foamex International Inc. ("Foamex International"), Foamex L.P., Foamex Latin America, Inc., Foamex Asia, Inc., FMXI, Inc., Foamex Carpet Cushion LLC, Foamex Capital Corporation, Foamex Mexico, Inc. and Foamex Mexico II, Inc., the above-captioned debtors and debtors in possession (each a "Debtor," and collectively, the "Debtors"), seeking entry of an order (i) approving the Debtor's Second Amended Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on November 27, 2006 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Second Amended Disclosure Statement"); (ii) approving the form and contents of Solicitation Packages relating to the Debtor's Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on November 27, 2006 (including all exhibits

thereto and as amended, modified or supplemented from time to time, the "Second Amended Plan") and the accompanying Second Amended Disclosure Statement; (iii) approving the form and manner of notice of the Confirmation Hearing; (iv) establishing a record date and approving procedures for distributing Solicitation Packages; (v) approving the forms of ballots; (vi) establishing a voting deadline for the receipt of ballots; (vii) approving procedures for tabulating acceptances and rejections of the Second Amended Plan; (viii) establishing the deadline and procedures for filing objections to confirmation of the Second Amended Plan and asserted cure amounts for executory contracts and unexpired leases that may be assumed as part of the Second Amended Plan; and (ix) granting related relief; and the Court having reviewed the Motion; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (c) notice of this Motion was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

THE COURT FURTHER FINDS THAT:

A. The Second Amended Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

B. The forms of the ballots substantially in the forms attached hereto as Exhibits D-1 through D-7 (each a "Ballot," and collectively, the "Ballots") are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these chapter 11 cases and are appropriate for each class of Claims and Equity Interests[1] entitled under the Second Amended Plan to vote to accept or reject the Second Amended Plan.

---

[1] Capitalized terms used and not defined herein shall have the meanings described to them in the Motion.

C.  Ballots need not be provided to holders of Claims or Equity Interests in the following classes because they are not entitled to vote to accept or reject the Second Amended Plan under section 1126 of the Bankruptcy Code: holders of Administrative Claims, Priority Tax Claims, DIP Financing Claims, Other Priority Claims (designated as Class 1 under the Second Amended Plan), Other Secured Claims (designated as Class 2 under the Second Amended Plan), Senior Subordinated Note Claims (designated as Class 4 under the Second Amended Plan), General Unsecured Claims (designated as Class 5 under the Second Amended Plan), Unliquidated Claims (designated as Class 6 under the Second Amended Plan), Intercompany Claims (designated as Class 7 under the Second Amended Plan), Equity Interests in Surviving Debtors Subsidiaries (designated as Class 8 under the Second Amended Plan), and Other Common Equity Interests in Foamex International (designated as Class 11 under the Second Amended Plan) since such claimants and equity interest holders are unimpaired and are, therefore, conclusively presumed to accept the Second Amended Plan.

D.  The time period set forth below, during which the Debtors may solicit acceptances to the Second Amended Plan, is a reasonable period of time for creditors and shareholders entitled to vote on the Second Amended Plan to make an informed decision to accept or reject the Second Amended Plan.

E.  The procedures for the solicitation and tabulation of votes to accept or reject the Second Amended Plan (as more fully set forth in the Motion, as modified herein, and approved hereby) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

F. The procedures set forth below regarding notice of the Confirmation Hearing and the contents of the Solicitation Package comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

Therefore,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED. Any objections to the Motion not previously withdrawn are hereby overruled.

2. The Second Amended Disclosure Statement is APPROVED.

3. Except as otherwise provided below, the Debtors are directed to mail or to cause to be mailed to claim or equity security holders entitled to vote on the Second Amended Plan on or before ten (10) days from the date of entry of this Order, Solicitation Packages containing: (a) written notice (the "Solicitation Package Notice"), substantially in the form annexed hereto as Exhibit A; (b) the Second Amended Plan in .pdf format on cd-rom; (c) the Second Amended Disclosure Statement in .pdf format on cd-rom; (d) this Order (without exhibits) in .pdf format on cd-rom; (e) a Ballot and a self-addressed return envelope to be used to return a completed Ballot; (f) the Opt Out Election form; (g) the letter from the Ad Hoc Committee of Senior Secured Noteholders and the Senior Secured Notes Indenture Trustee (each as defined in the Second Amended Plan) in support of the Second Amended Plan; and (h) such other information as the Court may direct or approve (items (a) through (h) being referred to herein collectively as the "Solicitation Package"). Creditors and equity security holders that hold Claims or multiple Interests in any given class should be required to receive only one (1) Solicitation Package and one (1) Ballot for voting their Claims or Interests with respect to that class. Creditors or equity security holders holding Claims and/or Interests in more than one

class, however, shall receive separate Ballots that must be used for each separate class of Claims and/or Interests. The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

4. Prior to transmission of Solicitation Packages, the Debtors may fill in any missing dates and other information, correct any typographical errors, reformat and make such other non-material, non-substantive changes to the Second Amended Disclosure Statement, the Second Amended Plan and any other materials in the Solicitation Package as they deem appropriate.

5. According to the Second Amended Plan, holders of Administrative Claims, Priority Tax Claims, DIP Financing Claims, Other Priority Claims (designated as Class 1 under the Second Amended Plan), Other Secured Claims (designated as Class 2 under the Second Amended Plan), Senior Subordinated Note Claims (designated as Class 4 under the Second Amended Plan), General Unsecured Claims (designated as Class 5 under the Second Amended Plan), Unliquidated Claims (designated as Class 6 under the Second Amended Plan), Intercompany Claims (designated as Class 7 under the Second Amended Plan), Equity Interests in Surviving Debtors Subsidiaries (designated as Class 8 under the Second Amended Plan), and Other Common Equity Interests in Foamex International (designated as Class 11 under the Second Amended Plan) (collectively, the "Unimpaired Parties") are unimpaired and, thus, are deemed to have accepted the Second Amended Plan. Accordingly, the Debtors are directed, pursuant to Bankruptcy Rule 3017(d), to mail or cause to be mailed to such Claim and Interest holders at the respective addresses to which notices are required to be sent, pursuant to Bankruptcy Rule 2002(g), a notice (the "Unimpaired Party Notice"), substantially in the form attached hereto as Exhibit B.

6. Each (i) Solicitation Package Notice, and (ii) Unimpaired Party Notice, provides adequate notice to all creditors and equity security holders of the time set for filing objections to confirmation of the Second Amended Plan and the hearing to consider confirmation of the Second Amended Plan in accordance with Bankruptcy Rules 2002(b) and 2002(d).

7. November 15, 2006 shall be the Record Date for purposes of determining which creditors or equity security holders are entitled to receive a Solicitation Package and to vote on the Second Amended Plan (subject to the disallowance of such creditor's Claim or equity security holders Interests for voting purposes as set forth herein), and for purposes of determining which creditors and equity security holders are entitled to receive the Unimpaired Party Notice.

8. Bankruptcy Services LLC, the Debtors' court-appointed notice, balloting and claims agent in these cases, shall be permitted to inspect, monitor and supervise the solicitation process, to serve as the tabulator of the Ballots and to certify to the Court the results of the balloting.

9. The Debtors shall, except as otherwise provided herein, mail by first class mail a Solicitation Package to each entity that is entitled to vote, as of the Record Date.

10. Creditors and equity security holders that have filed duplicate or multiple Claims or Interests in any given class or classes and are otherwise entitled to receive the Unimpaired Party Notice shall be mailed only one (1) Unimpaired Party Notice.

11. With respect to addresses from which notices of the Second Amended Disclosure Statement Hearing were returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages and Unimpaired Party

Notices to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Record Date. Failure to mail Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or violation of Bankruptcy Rule 3017(d). The Debtors may, but shall not be required to, attempt to locate the correct address, and prior to the Voting Deadline resend Solicitation Packages and Unimpaired Party Notices that are returned as undeliverable, provided, however, that in no event, unless expressly agreed to in writing by the Debtors, will such parties be afforded any additional time to vote.

12. The Debtors shall transmit the Unimpaired Party Notice to holders of the Senior Subordinated Notes and the Solicitation Packages to the holders of the Existing Common Stock and Senior Secured Notes, as applicable, as follows: the Unimpaired Party Notice or Solicitation Packages will be mailed no later than ten (10) days after the date that this Order is entered, (i) to each holder of record of the Notes or Existing Common Stock, as applicable, as of the Record Date and (ii) to each bank or brokerage firm (or the agent therefor) identified by U.S. Bank National Association (as Indenture Trustee for the Senior Secured Notes), The Bank of New York (as Indenture Trustee for the Subordinated Notes), Mellon Investor Services LLC (as transfer agent for the Existing Common Stock) or Bankruptcy Services LLC as an entity through which beneficial owners hold the Notes and Existing Common Stock. In addition to the Ballots for the beneficial owners of the Existing Common Stock and Senior Secured Notes, the Solicitation Packages mailed to the banks and brokerage firms will also include a Master Ballot.

13. To facilitate the mailing described above, U.S. Bank National Association (as Indenture Trustee for the Senior Notes), The Bank of New York (as Indenture Trustee for the Subordinated Notes) and Mellon Investor Services LLC (as transfer agent for the Existing

Common Stock) shall provide Bankruptcy Services LLC with a list containing the names, addresses and holdings of the respective holders of record as of the Record Date on or before the date that is five (5) calendar days after the date that this Order is entered.

14. The banks and brokerage firms (or their agents) through which beneficial owners hold the Senior Subordinated Notes shall distribute Unimpaired Party Notices to such beneficial owners within three (3) business days of receipt.

15. The banks and brokerage firms (or their agents) through which beneficial owners hold the Existing Common Stock or Senior Secured Notes shall distribute Solicitation Packages within three (3) business days of receipt to such beneficial owners for voting and include return envelopes provided by and addressed to the bank, brokerage firm or agent, as appropriate, so that such beneficial owners may return the completed beneficial owner Ballots to that entity (these beneficial owner Ballots are for beneficial owners that are not also record holders and shall be referred to herein as "Beneficial Owner Ballots"). The bank, brokerage firm or agent shall then summarize the individual votes of its respective beneficial owners from their individual Beneficial Owner Ballots on a master Ballot (the "Master Ballot") and then return the Master Ballot to Bankruptcy Services LLC by the Voting Deadline.

16. The Debtors shall serve a copy of this Order on (i) the Indenture Trustee for the Senior Secured Notes, (ii) the Indenture Trustee for the Senior Subordinated Notes, (iii) Mellon Investor Services LLC, the transfer agent for the Existing Common Stock, and (iv) each bank or brokerage firm (or their agents) identified by Bankruptcy Services LLC as an entity through which beneficial owners hold the Notes and Existing Common Stock. The Debtors are authorized to reimburse such entities for their reasonable, actual and necessary out-of-pocket expenses incurred in performing the tasks described above upon written request by such entities

without further order of the Court. This Court shall retain jurisdiction to resolve any disputes over any request for such reimbursement.

17. The Confirmation Hearing will be held at 1:00 p.m. prevailing Eastern Time on January 18, 2007. The Confirmation Hearing may be continued from time to time by the Court without further notice except for adjournments announced in open court.

18. The Debtors shall publish notice, substantially in the form annexed hereto as Exhibit C in the national edition of either The Wall Street Journal, The New York Times or USA Today not less than twenty-five (25) calendar days before the Confirmation Hearing. The Publication Notice shall provide sufficient notice of the Confirmation Hearing to persons who do not otherwise receive notice by mail.

19. Any objections to confirmation of the Second Amended Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim(s) or Interest(s) held by the objector. The Court shall only consider timely filed written objections and all objections not timely filed and served in accordance with the provisions of the Motion shall be deemed waived. Any objections must be filed with the Court and served so that they are <u>actually received</u> by the Court, the following parties (the "Notice Parties") and the other parties requesting notice in these cases on or before January 4, 2007 at 4:00 p.m. prevailing Eastern Time:

| | |
|---|---|
| Foamex International Inc.<br>1000 Columbia Avenue<br>Linwood, PA 19061<br>Attn: Gregory J. Christian, Esq. | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>Co-Counsel to the Debtors and Debtors in Possession<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Attn: Alan W. Kornberg, Esq.<br>      Brian S. Hermann, Esq. |

Young Conaway Stargatt & Taylor, LLP
Co-Counsel to the Debtors and Debtors in
 Possession
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19801
Attn: Pauline K. Morgan, Esq.
 Joseph M. Barry, Esq.

Lowenstein Sandler PC
Co-Counsel to the Official Creditors'
 Committee
65 Livingston Avenue
Roseland, NJ 07068-1791
Attn: Kenneth A. Rosen, Esq.
 Paul Kizel, Esq.

Richards, Layton & Finger, P.A.
Co-Counsel to the Ad Hoc Committee of
 Senior Secured Noteholders
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: John H. Knight, Esq.

Schulte Roth & Zabel LLP
Co-Counsel to the agents for the Debtors'
 postpetition lenders
919 Third Avenue
New York, NY 10022
Attn: Frederic L. Ragucci, Esq.

Landis Rath & Cobb, LLP
Co-Counsel to the agents for the Debtors'
 postpetition lenders
919 Market Street, Suite 600
Wilmington, DE 19899
Attn: Adam C. Landis, Esq.

Greenberg Traurig, LLP
Co-Counsel to the Official Creditors'
 Committee
The Nemours Building
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801
Attn: Donald J. Detweiler, Esq.

Schulte Roth & Zabel LLP
Co-Counsel to the Ad Hoc Committee of
 Senior Secured Noteholders
919 Third Avenue
New York, NY 10022
Attn: Adam Harris, Esq.

Kaye Scholer LLP
Co-Counsel to the agents for the Debtors'
 postpetition lenders
425 Park Avenue
New York, NY 10022-3598
Attn: Marc D. Rosenberg, Esq.
 Albert M. Fenster, Esq.

Buchanan Ingersoll & Rooney
Co-Counsel to the agents for the Debtors'
 postpetition lenders
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
Attn: Jami B. Nimeroff, Esq.

Cleary Gottlieb Steen & Hamilton LLP
Co-Counsel to the Significant Equityholders
One Liberty Plaza
New York, NY 10006
Attn: James L. Bromley, Esq.

Morris Nichols Arsht & Tunnell LLP
Co-Counsel to the Significant Equityholders
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
Attn: William H. Sudell, Esq.

Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801
Attn: David L. Buchbinder, Esq.

Cahill Gordon & Reindel LLP
Counsel to the Proposed Exit Lenders
Eighty Pine Street
New York, NY 10005
Attn: Susanna M. Suh, Esq.

20. The Debtors, or any other party supporting the Second Amended Plan, may file a reply to any objection to confirmation of the Second Amended Plan no later than 11:00 a.m. prevailing Eastern Time on January 16, 2007.

21. The appropriate Ballots are to be distributed to holders of Claims in Class 3 (Senior Secured Note Claims) and Interests in Classes 9 (Existing Preferred Stock) and 10 (Existing Common Stock) under the Second Amended Plan, which are the classes entitled to vote to accept or reject the Second Amended Plan.

22. The Debtors shall commence the solicitation period within ten (10) days after the Court enters this Order. Based on this schedule, all Ballots, including Master Ballots, must be properly executed, completed and delivered to Bankruptcy Services LLC (a) by first-class mail, in the return envelope provided with each Ballot, (b) by overnight courier, or (c) by personal delivery, so that they are actually received by Bankruptcy Services LLC no later than 4:00 p.m., prevailing Eastern Time, on January 4, 2007 (the "Voting Deadline"); provided, however, that beneficial owners of Senior Secured Notes or Common Stock that receive a Beneficial Owner Ballot from a bank or brokerage firm (or its agent) shall return the Ballot to such bank or brokerage firm (or its agent) not later than December 28, 2006, which deadline is

sufficient time to allow such firm to complete and deliver a Master Ballot to Bankruptcy Services LLC by the Voting Deadline.

23. The Unimpaired Party Notice adequately affords all of the Unimpaired Parties under the Second Amended Plan with an opportunity to opt out of the Non-Debtor Release. Any Unimpaired Party electing to opt out of the Non-Debtor Release must make such election by completing the form attached to the Unimpaired Party Notice (the "Opt Out Election") in accordance with the procedures set forth in the Unimpaired Party Notice and mail such Opt Out Election so that it is actually received by Bankruptcy Services LLC no later than 4:00 p.m. prevailing Eastern Time on the Voting Deadline. Any Unimpaired Party that fails to complete and mail the Opt Out Election by the Voting Deadline shall be deemed to consent to the Non-Debtor Release.

24. The Ballots adequately afford all creditors and equity security holders entitled to vote on the Second Amended Plan with an opportunity to opt out of the Non-Debtor Release. Any creditor or equity security holder entitled to vote on the Second Amended Plan wishing to elect to opt out of the Non-Debtor Release must make such election by completing the Opt Out Election and mailing the Opt Out Election directly to Bankruptcy Services, LLC in accordance with the procedures set forth in the respective Ballot so that it is actually received by Bankruptcy Services, LLC by the Voting Deadline, provided, however, that any creditor or equity security holder who (i) is entitled to vote to accept or reject the Plan as set forth on the relevant Ballot and votes to accept the Plan as set forth on the relevant Ballot, or (ii) is entitled to vote to accept or reject the Plan as set forth on the relevant Ballot but does not submit a Ballot with respect to the Plan and does not opt out of the Non-Debtor Release shall be deemed, by

virtue of their treatment contemplated under the Plan, to have consented to the Non-Debtor Release.

25. Solely for the purpose of voting to accept or reject the Second Amended Plan and not for the purposes of the allowance, or distribution on account, of Claims or Interests and without prejudice to the rights of the Debtors in any other context with respect to all creditors and equity security holders, the following voting procedures and standard assumptions shall be used in tabulating the Ballots:

    a. Creditors and equity security holders must vote all of their Claims or Interests within a particular class either to accept or reject the Second Amended Plan and may not split their vote. Accordingly, a Ballot (or multiple Ballots with respect to multiple Claims or Equity Interests held by a single creditor or equity security holder within a single class) that partially rejects and partially accepts the Second Amended Plan will not be counted.

    b. Ballots that fail to indicate an acceptance or rejection of the Second Amended Plan or that indicate both acceptance and rejection of the Second Amended Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

    c. Only Ballots that are timely received with **original signatures** will be counted. Unsigned Ballots will not be counted. Facsimile or e-mail Ballots will not be counted unless the creditor or equity security holder receives the written consent of the Debtors.

    d. If a creditor or equity security holder casts more than one Ballot voting the same Claim or Equity Interest prior to the Voting Deadline, the last Ballot received by Bankruptcy Services LLC prior to the Voting Deadline shall be deemed to reflect the voter's intent and shall supersede all prior Ballots.

    e. No Ballot shall be counted if it is (i) actually received after the Voting Deadline, unless the Debtors have granted, in writing, an extension of the Voting Deadline with respect to the creditor or equity security holder submitting such Ballot, (ii) illegible or contains insufficient information to permit identification of the creditor or equity security holder, the amount of the Claim or Equity Interest or the nature of the vote cast, or (iii) cast by a person or entity that does not hold a Claim or Equity Interest in a class that is entitled to vote on the Second Amended Plan.

f. The Debtors may, but shall not be required to, accept corrected Ballots to cure any defect after the Voting Deadline.

26. The following voting procedures and standard assumptions shall be used in tabulating Ballots cast by holders of Senior Secured Note Claims and equity security holders that hold Existing Common Stock through a bank or brokerage firm (important: these procedures do not apply to beneficial owners of Senior Secured Notes or Existing Common Stock that hold such securities in their own name as record holder):

a. All banks or brokerage firms (and their agents) through which beneficial owners hold Senior Secured Notes or Existing Common Stock are required to receive and summarize on a Master Ballot all Beneficial Owner Ballots cast by the beneficial owners and timely received, and then deliver the Master Ballot to Bankruptcy Services LLC no later than the Voting Deadline. Any such Beneficial Owner Ballots delivered directly to Bankruptcy Services, LLC shall not be counted.

b. All banks and brokerage firms (and their agents) are required to retain for inspection by the Court the Beneficial Owner Ballots for one (1) year following the Effective Date.

c. To avoid double counting, (i) votes cast and transmitted by means of a Master Ballot shall be applied against the positions held by such banks or brokerage firms in the Senior Secured Notes or Existing Common Stock, as evidenced by the record list of holders of the Senior Secured Notes, the Existing Common Stock or the records of the Depository Trust Company, and (ii) votes submitted by a bank or brokerage firm (or its agents) on a Master Ballot shall not be counted in excess of the position maintained by the respective bank or brokerage firm on the Record Date in the Senior Secured Notes or Existing Common Stock.

d. To the extent that conflicting votes or overvotes are submitted on a Master Ballot, Bankruptcy Services LLC shall attempt to resolve the conflict or overvote prior to submitting a certified report to the Court in order to ensure that as many votes as possible are accurately tabulated.

e. To the extent that overvotes on a Master Ballot are not reconcilable prior to the submission of a certified report, Bankruptcy Services LLC shall count votes in respect of such Master Ballot in the same proportion as the votes to accept and reject the Second Amended Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the applicable bank or brokerage firm's position on the Record Date in the Senior Secured Notes or Existing Common Stock.

f.  Banks and brokerage firms (and agents thereof) are authorized to complete multiple Master Ballots, and the votes reflected by such multiple Master Ballots should be counted, except to the extent that they are duplicative of other Master Ballots. If two (2) or more Master Ballots submitted are inconsistent in whole or in part, the latest Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot, subject to the Debtors' right to object to the validity of the second Master Ballot on any basis permitted by law, including under Fed. R. Bank. P. 3018(a), and, if such objection is sustained, the first Master Ballot will then be counted.

g.  Each record holder will be deemed to have voted the full amount of its Claim or Equity Interest relating to the Senior Secured Notes or Existing Common Stock, notwithstanding anything to the contrary on any Ballot.

27. The Debtors will cause the *Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* (the "Cure Notice"), in a form substantially similar to the form attached hereto as Exhibit E, to be served on the non-debtor parties to all executory contracts and unexpired leases (the "Subject Contracts") within ten (10) business days of the date of the entry of this Order. Among other things, the Cure Notice shall set forth the amount which the Debtors believe must be paid in order to cure all monetary defaults under each of the Subject Contracts.

28. The Cure Notice provides adequate notice to all non-Debtor parties to all executory contracts and unexpired leases of (i) the possibility that such non-Debtor parties' Subject Contracts may be assumed, (ii) the Debtors asserted Cure Amounts with respect to such Subject Contracts and (iii) the procedure for filing Cure Objections with respect to such Cure Amounts and/or the proposed assumption and/or assignment of such Subject Contracts under the Second Amended Plan. Receipt of a Cure Notice shall not constitute a determination by the Debtors to assume <u>any</u> executory contract or unexpired lease; the Debtors may still decide <u>not</u> to assume any executory contract or unexpired lease through the Second Amended Plan or otherwise.

29. The non-Debtor parties to the Subject Contracts shall have twenty-one (21) calendar days after service of the Cure Notice (the "Cure Objection Deadline"), which deadline may be extended in the sole discretion of the Debtors, to object (a "Cure Objection") to the (a) cure amounts listed by the Debtors ("Cure Amounts") and to propose alternative cure amounts, and/or (b) proposed assumption and/or assignment of the Subject Contracts under the Second Amended Plan; provided, however, that if the Debtors amend the Contract Notice or any related pleading that lists the Subject Contracts to add a contract or lease or to reduce the cure amount thereof, except where such reduction was upon mutual agreement of the parties, the non-Debtor party thereto shall have an additional ten (10) calendar days after service of such amendment to object thereto or to propose an alternative cure amount(s).

30. Any party objecting to the Cure Amount(s), whether or not such party previously has filed a proof of claim with respect to amounts due under the Subject Contract(s), or objecting to the potential assumption and/or assignment of such Subject Contract(s), shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect of the Subject Contract(s) and/or any and all objections to the potential assumption and/or assignment of such Subject Contract(s), together with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is actually received no later than 4:00 p.m. prevailing Eastern Time on the Cure Objection Deadline. If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Bankruptcy Court shall determine the amount of any disputed Cure Amount(s) or objection to assumption at a hearing to be held on January 18, 2007 at 9:30 a.m. prevailing Eastern Time or such other hearing date to which the parties may mutually agree.

31.     The Debtors may, in their sole discretion, extend the Cure Objection Deadline without further notice, but are not obligated to do so.

32.     In the event that no Cure Objection is timely filed with respect to a Subject Contract, the counterparty to such Subject Contract shall be deemed to have consented to the assumption of the Subject Contract and the Cure Amount proposed by the Debtors and shall be barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors prior to the Effective Date of the Second Amended Plan. In addition, if no timely Cure Objection is filed with respect to a Subject Contract, upon the Effective Date of the Second Amended Plan, the counterparty to such Subject Contract shall be forever enjoined and barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors and the Reorganized Debtors and the non-debtor party to the Subject Contract shall enjoy all of the rights and benefits under the Subject Contract without the necessity of obtaining any party's written consent to the Debtors' assumption of the Subject Contract, and such counterparty shall be deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of the Subject Contract.

33.     The inclusion of a Subject Contract in the Cure Notice is without prejudice to the Debtors' right to modify their election to assume or to reject such Subject Contract prior to the entry of a final, non-appealable order (which order may be the order confirming the Second Amended Plan) deeming any such Subject Contract assumed or rejected, and inclusion of a Subject Contract in the Cure Notice is <u>not</u> a final determination that any Subject Contract will, in fact, be assumed.

34. The Debtors agree that, subject to confirmation of the Second Amended Plan and the Effective Date, the secured claim of Commercial Roofing System, Inc., to the extent allowed, will be paid in cash in accordance with the terms of Article IV.B.1(ii) of the Second Amended Plan.

35. The Claim of Nordstrom, Inc. (Claim No. 931) shall be treated as a Disputed Claim in Class 5 under the Second Amended Plan until such time as it becomes an Allowed Claim under the Second Amended Plan and the Claim of Nordstrom, Inc shall be removed from the list of Unliquidated Claims on Exhibit A to the Second Amended Plan.

36. The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further Order of the Court.

Dated: Wilmington, Delaware
       November 27, 2006

Kevin Gross
United States Bankruptcy Judge